rson. Good morning. May it please the court. My name is Daniel Perez. I represent Clifton Jackson. I have two primary arguments this morning. I'm not sure that I will need to take all of my allotted time and I know the court's schedule is tight. Both of my arguments address what I think fairly is the is the real issue in this appeal, which is whether had this impeachment evidence related to Dwayne Voss been admitted at the trial, would the result of the proceeding have been different. Number one, Dwayne Voss was an absolutely critical witness. He was the only witness who corroborated the vast majority of the testimony offered by Sherry McBride. And at the end of the day, there's really no question in this case that criminal activity took place or that this fraud occurred or that the TurboTax cards were used or the Green Dot cards were used. The real question in this trial was who was responsible for what conduct. And McBride's position was that Jackson was the architect of this scheme and Voss was critical because he corroborated McBride's testimony. He was so important that the jury asked after it had received the case for his testimony to be read back in its entirety. Voss and McBride were siblings. They were siblings. That's correct, Your Honor. And the importance of the impeachment testimony really can't be overstated. Because it's not simply that Voss was involved in a conspiracy, in a drug trafficking organization. It's the timing of his criminal conduct and the fact that he was, in addition to participating in this conspiracy, was also involved in this fraud. He was out on pre-trial release. He was out on state parole. So it wasn't simply he's a criminal. The jury already knew that because the jury had heard testimony both on his direct and on his cross that he had committed drug crimes in the past. It was more along the lines of he wasn't, he didn't respect the authority of the courts. He violated the terms of his pre-trial release. He made that perfectly clear on the witness stand, didn't he? What he, well, I'm not really sure what he made perfectly clear on the witness stand, Judge Kaplan. He read his grand jury, basically he read his grand jury testimony on direct. That testimony come in as recorded recollection. I wish I had an answer for that. And I really wish the law was different and I could have appealed that. Unfortunately, it came in because the defense lawyer said, sounds fine to me. He didn't object. He didn't object. That's correct. That's why I haven't raised it on appeal. Mr. Voss, I mean, the jury was aware that he had committed three felonies. I think all involving drugs. Well, three felonies if you include this one. Two involving drugs. He was admitting to this. Well, of course. So those are your three felonies. Two prior drug crimes and this conspiracy case involving income tax and The jury could hardly have been left with the impression that he was angelic. No, that's not my point. My point is that the first of all, drug crimes are one thing. OK, drug crimes, first of all, were more remote in time. They were they were years before. I think one was nine years before and the other was six years before he was sentenced for both. And the sentences ran concurrently, saying that somebody is involved in drug crimes. All of these folks were involved in drug crimes. Your point is that the time the government put him on the stand at that very exact moment, the government, this complaint reveals that the government had information that he was involved in an ongoing drug conspiracy. That's correct. Only six months prior. That's right. Those wiretaps were six months before the trial of Clifton Jackson. And they hadn't acted on. He was still walking around on the street. He was still on the street and in violation of the terms of his pretrial release, in violation of the terms of his parole. That's correct. And that's different. Value would be that this evidence is sitting out here and they're holding it at a hammer over his head and it's influencing whatever evidence he gives to the jury today in court. That is precisely correct. And so if I can address my second argument, which is the weakness, frankly, of the government's case, not that crimes didn't take place. We know crimes took place. But who did what? Who was responsible for what? Who was really the mastermind of this scheme? Was it really Clifton Jackson or was it perhaps Voss and or his sister, Destiny McBride? The three cooperating witnesses had something in common apart from the fact that they were cooperating in this case. All of them were involved somehow in drugs. OK. McBride was in the car when Jackson allegedly gave crack to the older gentleman in exchange for his personal information. Voss had his prior drug convictions. Sherry Basirovic admitted on the stand that she had purchased heroin from Clifton Jackson. So they weren't just cooperating, but they also were engaged in drug crimes. And all three of them lied to the police, not once, but on multiple occasions. If you go back and you look through the record, they all say basically the same thing. When law enforcement came to me and asked me questions, I denied it. And McBride said that when law enforcement brought her down to the station in the presence of her lawyer, she denied it again. And it was only after they persisted. So these witnesses had a history of lying to law enforcement. And now we're back to the issue of Voss. Was Voss receiving some sort of sweetheart deal? Was he being protected by the prosecutors in this case or perhaps by other law enforcement agencies? And those are the kinds of questions that really should have been sorted out and hashed out by the jury. On the question of the strength of the evidence, doesn't Berkovic's testimony, which seemed to me independent of the two siblings, and both corroborates their testimony and is corroborated by it, doesn't that hurt your argument that the testimony wasn't very powerful here? I would submit to Your Honor, Judge Livingston, that Basirovic was really a witness more on the margins. Yes, the answer to Your Honor's question is yes. But bear in mind, this was a 66 count indictment. And Mr. Jackson, in fairness to him, is appealing all 58 counts of which he was found guilty. Not simply the conspiracy counts, but there were dozens and dozens of substantive counts too. So let's assume that Basirovic corroborated portions of it. Let's say it was a dozen. I don't think it was quite a dozen of the substantive counts, but let's say it was a dozen. That still leaves dozens and dozens of crimes that ultimately I suggest go back to McBride and or Voss. And McBride was not only part and parcel, but she was in the middle of all this. Her Wi-Fi connection, her house, she was the one that set up these addresses. She's with him when he's allegedly dealing the drugs. She is the linchpin of this case, and clearly there were problems with her credibility. Voss was critical to bolster her testimony. I see I'm out of time. A reserved rebuttal, I believe. Thank you. We'll hear you then, sir. May it please the court, my name is Joseph Karashevsky. I'm appearing on behalf of the United States. You concede that this is information that should have been turned over. Yes, and we did so when the defendant made the Rule 33 motion before the district court. Said that, yes, this was something that could have been used to cross-examine the defendant. However, I mean, Mr. Voss, the witness. However, the district court did not abuse its discretion and acted well within that discretion. Can I just ask about the brief at the start? The brief was filed late in this case. Is it properly before us, or do you need to seek permission for us to consider it? Your Honor, it was filed late, so I do ask for permission that you consider it. So I do ask for that permission. I suppose we'll take it under advisement. Thank you, Your Honor. So the district court did not, and Your Honor, I did make a motion for filing a late brief. Yes, no, I'm aware of that, and this was submitted to the full panel subject to its reconsideration by the full panel. Thank you, Your Honor. Thank you. And the district court did not abuse its discretion in this case. The judge who sat through the trial made a determination that this would not have had the dramatic effect of undermining confidence in the verdict. Looking at the cumulative nature of this evidence in terms of cross-examining Mr. Vest and the fact that he had already been cross-examined on his prior convictions, that he had been cross-examined on what benefit he was hoping to get from his pleading guilty, and also the strength of the government's case. Can I ask again, and I know that it wasn't objected to at trial, but the government proffered this evidence under the recorded recollection exception to the hearsay rule, the grand jury testimony. Is that a proper basis for this evidence to have been admitted? Well, Your Honor, there was no objection. I mean, that's first and foremost. That wasn't my question. Yes. Does it fit within the recorded recollection exception, the grand jury testimony? Well- I mean, I think the assistant said that she'd done this in other trials. That is what she said, and, Judge, I think the best that I can say at this point is that there was no objection to it. The witness was on the stand. The witness stated, I'm not going to answer any more questions, was being- The assistant even said it's not that he doesn't remember. It's just that he doesn't want to testify. Yes. But this- the witness, if not under the recorded recollection provisions of the rules of evidence, this witness did make himself unavailable to testify. He said he wasn't going to testify. Well, is that precisely accurate? The transcript wasn't just read out, was it? Wasn't it used question by question? And Vass was asked, essentially, did you- was this question asked and did you answer as follows? That is the way- I'm paraphrasing. Yes, Your Honor. That is the way that it came in, that the questions were asked. The AUSA did read the transcript saying you were asked this question, you gave this answer. Did that happen? Yes. Did anybody ever ask the question that a lot of super careful lawyers would have asked? And was the testimony you gave on that occasion true? I don't believe we have that, Your Honor. We do have, did you give this testimony? And do you remember giving this testimony? Yes. So I don't believe we got into that. I don't believe that that question was asked, the next question that Your Honor proposed. However, in terms of the timing of this and the inference that my opponent argues that could have been drawn, that he was- the government was giving him a pass on the drug trafficking activity because of his status as a witness here. He was not indicted. He was not indicted. And of course, the- Do we actually know in what context and for what purpose he was mentioned? He was mentioned, Your Honor, because he was picked up on a wiretap. He was picked up on a wiretap speaking with an individual, frankly the main defendant in that other case, Mr. Worthy, on three occasions, two days, three occasions spanning two days over the drug conspiracy that was alleged to have spanned a year or more. Were they talking about drugs? They were, yes. That was the inference that was being drawn that they were discussing about picking up drugs and trying to hide drugs from him. So yes, they were. Could you help- the brief is brief in this case. And there's a footnote that says we're not going to marshal all the evidence because there's no sufficiency challenge here. But as I understand the task that we have is to assess whether this impeachment evidence was material, whether there's a reasonable probability of a different result in this case. So the marshaling of the evidence seems to me would have been helpful. More marshaling of the evidence would have been helpful in the brief. But let me ask if you could do it for us now. How do we, given this theory that Voss and his sister were giving false testimony in court, how do we know there's not a reasonable probability that the jury might have said, we're going to reject those counts having to do with those two. Maybe they would have convicted on fewer number of counts. Maybe they wouldn't have convicted at all. How do we know that's not the case? Well, Your Honor, we do have, as Your Honor noted, Sherry Biserovich's testimony, which corroborates that testimony. And if you're saying that maybe they would have convicted on fewer counts because of the argument that Voss and McBride were corroborating or were basically conspiring against Mr. Jackson. However, that would bolster that because she was talking about the same things independently. She did not know Voss. She did not know McBride. So she was testifying. Her testimony about the activity that Mr. Jackson was engaged in, certainly that would bolster the testimony of McBride and the testimony of Voss, who had also testified about Jackson's involvement. Furthermore, you had these people whose personal identifiers were used. They testified. And they said, this is what happened. And I provided the information, and the information wound up being used in these fraudulence tax returns that were filed. So you had that information. So not only did you have the testimony of these co-conspirators, you also had the testimony of the people whose information had been used, and that corroborated the testimony of McBride and Voss as well. So that's essentially what you had at trial and what the district court, what the district judge looked at after having sat through this trial, saying that the evidence was overwhelming. Very great is what he said. Pardon me? Very great. Yes, very great. I have a couple of questions, some relating to the grand jury testimony, but also the scope of review. You said before, and I'm inclined to think you're right, that the test here is whether the trial judge abused his discretion in denying the Rule 33 motion. Now, isn't the usual test of whether there's been an abuse of discretion an error of law or a clear error of fact? Yes. So isn't the obligation to marshal the evidence in a way that demonstrates clear error of fact on your adversary? Yes, Your Honor. And this is what the district court relied upon, looking specifically at these three witnesses. And yes, Your Honor, so the fact, to say that the district court abused its discretion, it would have to show specifically what about the evidence, what about the trial, or what was lacking in the evidence that would undermine the exercise of discretion in the way that the district court exercised its discretion in this case. Now, my question about the grand jury testimony is this. Could it perhaps have been properly received, even if it was not properly received under 803-5? Under the residual exception in 807? It seems to me the key issue on that point is notice, which may well have been waived by the failure to object. The notice in terms of? You normally have to give notice of an intention to offer under 807 prior to trial, sufficiently in advance, so the other side could meet it. Well, and certainly the defense did have this testimony. This testimony had been turned over as JNCSAC material. I suppose that's relevant, of course, but they didn't know you were going to use it in this way, neither did you. Right. That's correct. And that kind of caught everyone by surprise when Mr. Vass just decided that he wasn't going to answer questions anymore. So, yes, Your Honor, that would be another basis upon another evidentiary basis under which to admit the evidence. Do you know when it became evident that he wasn't going to testify? Because then when you read the colloquy, the assistant seemed to be aware that this could be a problem at the time the testimony began. He was ready for it, yes, I agree. I don't know exactly when it became apparent to her that this might happen. I think she put him on the stand, he started to answer questions, and then he clammed up. So I don't think it was evident from the very minute she put him on the stand that he said, look, I'm not answering any questions, because he started to answer questions. And in addition, just the testimony might have been admissible under 801 as a prior inconsistent statement made under oath. The grand jury testimony under our authority in Truman, did you ever think of that possibility? I did as far as a prior inconsistent statement, Your Honor. I'm not sure that he testified to anything inconsistent to what he testified to in the grand jury. Our point was that this is what he testified to and this is what we were relying upon. Fair enough. I don't think it was anything inconsistent. And the timing as well, if I just might say one last thing. This, Mr. Voss testified in the grand jury at a time, the indictment was returned in April 2013. So he testified in the grand jury well before he was involved in the drug trafficking activity that was not disclosed, well before that. So the fact of him being offered this sweetheart deal or the inference that he was being offered, being given a pass on the drug trafficking activity. It doesn't work out timing wise because essentially everything that came in was what he testified to in the grand jury. I realize, I'm sorry, I didn't mean to interrupt. No, thank you. I'm sure it's not in the record, but I'm just curious as to what you think was going on with the refusal to answer questions. Was the guy worried about perjury and testifying inconsistently with the grand jury or do you have a theory? It's a matter of curiosity. I think, Your Honor, what happened and it appears that what happened is he just didn't want to testify. He just didn't want, I guess to use a colloquial term, he didn't want to be a snitch. He had done it already, certainly in the grand jury, but sitting up on the stand, he decided that he didn't want to answer any more questions. Thank you. Thank you. Mr. Perez. I just want to address the last point first regarding my adversary's representation that Voss testified in the grand jury long before these wiretaps. I don't recall if that's actually true, but let's assume that it is. But the worthy conspiracy, if you go back and you look, extended from June of 2013 to July of 2014. And the wiretap was June of 2014. So this conspiracy extended well into the past and very well may have been going on at the time that Voss had testified in the grand jury. Of course, we'll never know because Jackson didn't know about any of this until after the jury had convicted him. On the other hand, if he was under obligation and pressure from the prosecution to testify, it's odd then that he didn't testify, that he refused to. You know, at this point, I think there's a lot of hypotheticals, and it's very hard for me to figure out what his motivation is in terms of— Well, in terms of these hypotheticals, it's very difficult to identify an abuse of discretion. Well, you know, with all due respect, Your Honor, I don't think that it is. We're back to my main argument that none of this came in. The jury didn't hear about it. It was actually worse than defense counsel not objecting to using the grand jury testimony this way. He actually affirmatively agreed to it. He said, yeah, I think at one point on page 608 of the trial transcript, he was asked if he had any objection. He says, it sounds about right to me. Isn't that really a distinction without a difference? No. Maybe. Maybe it is, Your Honor. But to me, it's one thing to just miss an objection. It's another thing entirely under these circumstances to say, yes, it sounds right to me that this witness who has said one time and one time only, I don't want to answer any more questions, that we should now start reading his grand jury testimony into the record. But I don't want to get sidetracked on the grand jury issue because it's not my, unfortunately, the record is what it is. It's not the issue that I'm arguing here. Well, it might be relevant to assessment of materiality. I mean, we have to assess whether the value of the impeachment evidence, and it seems to me that would be relevant to how the witness was examined, potentially. I quite agree. I mean, it would have been better for the jury to hear this, again, under the particular circumstances of this case. And as I said before, none of these cooperating witnesses were angels. They all had lied to law enforcement on more than one occasion when they were initially confronted with these crimes. I don't think I did this in my brief, but I want to do it to preserve Mr. Jackson's right. I want to reserve his right to raise any arguments related to the grand jury testimony under 2255. And the last point that I want to make on rebuttal is with respect to Baserevic, Judge Livingston. If you go back and you look, Baserevic testified that Jackson gave her identifying information and names for seven people. If you look at pages A41 and 42, which is the indictment, there were 25 individuals altogether. Each of the individuals had two counts related, two substantive counts related to them. So 25 minus 7 leaves us with 18, 18 times 2, that's 36 counts. And correct me if I'm just misremembering the record, but there is also evidence. I think Voss testified that he went into an ATM to obtain money. Correct. And he was using a name that was a relative of Baserevic's. Am I right about that? I think that that's correct, Your Honor. And he testified that he didn't know Baserevic. Baserevic testified that she didn't know him. So that's a piece of circumstantial evidence that corroborates his testimony. I can't disagree with that, Judge. Thank you. Thank you. We'll reserve decision.